IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**MORTGAGE RESEARCH CENTER, LLC
(d/b/a VETERANS UNITED AND VETERANS
UNITED HOME LOANS),**

      **Plaintiff,**

      v.

**FLAGSHIP FINANCIAL GROUP, LLC,**

      **Defendant.**

Case No. 16-2253-JAR-GEB

## MEMORANDUM AND ORDER

Plaintiff Mortgage Research Center , Inc. ("Veterans United") brings this action against Defendant Flagship Financial Group, LLC ("Flagship") alleging copyright infringement, false advertising, and unfair competition. Before the Court is Defendant's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss and 28 U.S.C. § 1404(a) Motion to Transfer to Utah (Doc. 11). Defendant moves to dismiss the copyright infringement claim because it is based on nonregistered elements of Plaintiff's website. In the alternative, Defendant moves to transfer this matter to the District of Utah. The motion is fully briefed and the Court is prepared to rule. As described more fully below, the Court finds that this case should be transferred to the District of Utah. The Court further denies without prejudice the motion to dismiss.

**I.    Background**

Plaintiff is a Missouri limited liability company with its principal place of business in Columbia, Missouri. Its second largest office is located in Lenexa, Kansas. Plaintiff is a leading provider of home mortgage loans to active duty and veteran members of the United States Armed Forces under the United States Department of Veterans Affairs' Home Loan Guaranty

1

Program.  Plaintiff offers its services through, among other resources, the Veterans United website.

Plaintiff owns a federally-registered copyright in the text of the Veterans United Website, Registration No. TXu 1-963-577, issued by the United States Copyright Office on October 28, 2015.  Plaintiff also owns a federally-registered copyright in the 2-D artwork and photography used on the Veterans United Website, Registration No. TXu 1-223-940, issued by the United States Copyright Office on October 28, 2015.

Since the creation of the Veterans United Website in 2014, Plaintiff has used and disseminated the Veterans United Website in commerce in Kansas and throughout the United States to reflect and promote its status as a valuable and unique financial resource for thousands of active duty and veteran service member homebuyers and their families.  Every page of the Veterans United Website is marked with a valid copyright notice.

Defendant is a Utah limited liability company with its principal place of business in Lehi, Utah.  Defendant also provides VA-guaranteed home mortgage loans to active duty and veteran service members.  Defendant conducts business throughout the United States, including in this District and the State of Kansas.  In the Amended Complaint, Plaintiff alleges that Defendant's website "copies several copyrighted components of the Veterans United Website."  Plaintiff alleges that Defendant copied both the copyrighted text of the website, and the copyrighted artwork and photography.  The Amended Complaint provides a "representative sample" of the similarities between the two websites,[1] and alleges several examples of the alleged similarities between various components of the websites.[2]

---

[1] Doc. 9, Ex. C.
[2] Doc. 9 ¶¶ 23–27.

## II.     Motion to Dismiss

Defendant moves to dismiss Count 1 of the Amended Complaint, which alleges copyright infringement. To survive a motion to dismiss for failure to state a claim, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[3] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[4] The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully,"[5] but requires more than "a sheer possibility."[6]

The plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*[7] seeks a middle ground between heightened fact pleading and "allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the Court stated 'will not do.'"[8] *Twombly* does not change other principles, such as that a court must accept all factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[9]

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[10] Thus,

---

[3]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[4]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in the original).

[5]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6]*Id.*

[7]550 U.S. 544 (2007).

[8]*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

[9]*Id.* (citing *Twombly*, 550 U.S. at 556).

[10]*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[11]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[12]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13]

To state a claim of copyright infringement, Plaintiff must allege facts to support two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."[14]  Defendant argues that the Amended Complaint alleges similarities between its website and both registered and unregistered works.  To the extent Plaintiff alleges infringement of unregistered components of its website, Defendant argues that the claim should be dismissed.  In its response, Plaintiff "acknowledges that the First Amended Complaint also contains some copyright infringement allegations that are based on the current version of the Veterans United Website," as opposed to the registered copyrights deposited with the Copyright Office, but it goes on to state that it "does not intend to pursue infringement claims based on those allegations in this litigation."[15]  Both parties acknowledge that amendment to clarify Plaintiff's copyright infringement claim would cure the problems identified in Defendant's motion.  In light of this concession and the Court's determination that transfer is appropriate, the

---

[11]*Id.* at 678–79.

[12]*Id.* at 679.

[13]*Id.* at 678.

[14]*Blehm v. Jacobs*, 702 F.3d 1193, 1199 (10th Cir. 2012) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

[15]Doc. 14 at 13.

4

Court denies Plaintiff's motion to dismiss without prejudice. Upon transfer, Plaintiff may seek leave to amend under Fed. R. Civ. P. 15(a)(2).

**III.   Motion to Transfer**

Defendant also moves to transfer this case to Utah under 28 U.S.C. § 1404. Under § 1404(a), the Court may transfer a case to any district where it might have been brought "for the convenience of the parties and witnesses" and "in the interest of justice." The parties do not dispute that this matter could have been brought in the District of Utah.[16] In determining whether to grant a motion to transfer, this Court considers the following discretionary factors:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.[17]

"Unless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed."[18] The burden of proving that the existing forum is inconvenient lies with the moving party.[19]

**A.   Plaintiff's Choice of Forum**

Although a plaintiff's forum choice "should rarely be disturbed,"[20] the plaintiff's choice of forum receives little deference when, as here, the plaintiff does not reside there.[21] Plaintiff's

---

[16] *See* 28 U.S.C. § 1400(a).

[17] *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (quoting *Tex. Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)).

[18] *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) (quoting *William A. Smith Contracting Co. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir. 1972)).

[19] *Id.* at 965 (citing *Chrysler Credit Corp.*, 928 F.2d at 1515).

[20] *Id.*

5

choice of forum is also accorded little weight "where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum."[22]  Defendant argues that Plaintiff's choice of forum should not receive deference here for both reasons.  Plaintiff advises that its corporate headquarters is located approximately 130 miles from Kansas City, Kansas, in Columbia, Missouri.[23]  Plaintiff's second largest office is located in Lenexa, Kanas, where it employs 207 employees.  The Court finds that under these circumstances, Plaintiff's choice of forum should be entitled to less deference.

Defendant also argues that the facts giving rise to this lawsuit lack a material connection to Kansas, and thus Plaintiff's choice of forum should be given little weight.  The copyright claim turns on the degree of similarity between Plaintiff's registered trademarks, utilized on its website, and Defendant's use of certain marks on its own website.  Plaintiff's website is alleged to be "used and disseminated . . . in commerce in Kansas and throughout the United States,"[24] while Defendant's website is allegedly made available and promoted to users in Kansas and throughout the United States.[25]  Defendant argues that its website does not target Kansas customers and is not interactive.  Instead, Defendant maintains that the development of the allegedly infringing website took place in Utah.  Plaintiff responds that Defendant is registered in Kansas and maintains a registered agent in Kansas for service of process.  It also points out that Defendant's website targets Kansas customers by providing Kansas-specific savings estimates and allowing them to obtain a quote on the website.  Plaintiff argues further that the false

---

[21]*Menefee v. Zepick*, No. 09-2127-JWL, 2009 WL 1313236, at *1 (D. Kan. May 12, 2009); *Benson v. Hawker Beechcraft Corp.*, No. 07-2171-JWL, 2007 WL 1834010, at *2 (D. Kan. June 26, 2007).

[22]*Empl'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010).

[23]The parties advise that this case was originally filed in the Western District of Missouri.  After Defendant moved to dismiss for lack of personal jurisdiction, Plaintiff voluntarily dismissed its complaint and refiled in this district.

[24]Doc. 9 ¶ 18.

[25]*Id.* ¶ 30.

6

advertising and unfair competition claims are based on facts that occurred in Kansas because injury occurred in Kansas.

In a copyright infringement case, the key facts relate to the design, development, and production of the allegedly infringing product.[26]  Because Defendant is based in Utah, facts surrounding its website design and development are tied to Utah, and not to Kansas.  As to the false advertising and unfair competition claims, Plaintiff fails to explain how the facts giving rise to these claims are significantly connected to Kansas.  Plaintiff cites *CYI, Inc. v. Ja-Ru, Inc.*,[27] where the Southern District of New York considered the operative facts that relate to a copyright infringement action as compared to unfair competition and trademark infringement cases.  Plaintiff correctly notes that court's acknowledgement of the "oft-repeated rule in cases of trademark infringement, dilution, or unfair competition, . . . that the locus of operative facts is the initially chosen forum if acts of infringement, dilution, or unfair competition occurred in that forum."[28]  But the court proceeded to explain that the initially chosen forum is not the locus of operative facts simply because there have been sales in that district, along with other districts.[29]  And, as the court in *CYI* explained, an allegation of willfulness, which the plaintiff alleges in its false advertising and unfair competition claims here, "will presumably turn, in large part, on facts regarding the design and development of the accused products and packaging and the knowledge of the employees involved in that process."[30]

---

[26]*See, e.g.*, *Freeplay Music, LLC v. Gibson Brands, Inc.*, –F. Supp. 3d–, 2016 WL 4097804, at *3 (S.D.N.Y. July 18, 2016).

[27]913 F. Supp. 2d 16 (S.D.N.Y 2012).

[28]*Id.* at 19.

[29]*Id.* at 21.

[30]*Id.*

The Court agrees with Defendant that there are no material facts that allegedly occurred in Kansas that require this Court to give substantial weight to Plaintiff's chosen forum. Plaintiff offers no authority in support of its argument that Defendant's act of registering as an LLC in Kansas suffices to show that the facts of this case are materially connected to Kansas. And although Defendant allegedly serves customers in Kansas and therefore offers Kansas-specific information for those customers on its website, the website is not interactive, nor does it target Kansas customers any more than it targets customers from other states. Giving credence to this tenuous connection would mean that "each such district has a roughly equivalent claim to being the locus of operative facts."[31] And while Plaintiff also alleges false advertising and unfair competition claims, it fails to explain how these claims create a connection to Kansas, particularly given that Defendant's conduct is alleged to have been willful. Such willful conduct would have occurred in Utah. Thus, even if Plaintiff is considered a resident of Kansas, the Court would give its choice of forum little weight because the facts of this case lack a material relation or significant connection to Kansas.

### B.     Accessibility of Witnesses and Other Sources of Proof

Next, Defendant argues that Utah would be a more convenient forum for the witnesses. "The convenience of witnesses is the most important factor in deciding a motion under § 1404(a)."[32] Defendant argues that there are no witnesses or evidence relevant to this litigation located in Kansas. But to demonstrate inconvenience under this factor, Defendant must: "(1) identify the witnesses and their locations; (2) 'indicate the quality or materiality of their testimony'; and (3) 'show that any such witnesses were unwilling to come to trial, . . . that

---

[31] *Id.*

[32] *Empl'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010) (quoting *Cook v. Atchison , Topeka & Santa Fe Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993)).

8

deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary.'"[33]  Defendant argues that all of the individuals who designed or worked on its website are located in Utah.  Defendant specifically identifies two witnesses expected to testify at trial: Will Farrar, Defendant's owner and President; and Dave Parkinson, founding partner of Trafficado, a Utah-based web design and hosting company that helped develop the allegedly infringing website and now hosts it.  Defendant argues that because the design and development of FFG's website will be a key issue at trial, these will be key witnesses.  Because Parkinson is a third party witness living more than 100 miles away from Kansas City, he would not be subject to the Court's subpoena power.  Nonetheless, there is no evidence that Parkinson is unwilling to voluntarily travel to Kansas to testify, or that his deposition testimony would be unsatisfactory, given the significance and materiality of his testimony.

Defendant also argues that all of the relevant documents and evidence in this case are located in Utah and not in Kansas, pointing to the location of its own "paper files and computer servers,"[34] and of Trafficado's records and computer servers.  While it is true that Defendant is likely to produce most of the evidence in this case given that it is the accused infringer, the Court finds the location of evidence carries little weight given the availability of electronic discovery.[35]

The convenience factor weighs in favor of transfer given the specific witnesses identified by Defendant, the uncertainty about the third-party witness' willingness to travel to Kansas for trial, and the lack of evidence that any material witness to this dispute is located in Kansas.

### C. Cost of Making Necessary Proof

---

[33]*Id.* (quoting *Scheidt*, 956 F.2d at 966) (internal alterations omitted).

[34]Doc. 12-6, Lowder aff. ¶ 12.

[35]*See CYI*, 913 F. Supp. 2d at 24.

There is no evidence about the cost of litigating in this forum. Instead, Defendant offers evidence that Plaintiff closed more home loans and a much greater total loan volume as compared to Defendant. Defendant suggests that Plaintiff thus has greater means to litigate in a distant jurisdiction. Plaintiff is correct that the relative means of the parties is not a factor explicitly recognized by the Tenth Circuit as relevant to the transfer analysis. Nonetheless, even in courts that do consider this factor in the transfer analysis, it has been recognized that "when both parties are corporations, this factor is given little weight."[36] The Court finds that this factor is neutral.

### D. Difficulties that May Arise from Congested Dockets

"When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge."[37] The most recent statistics from the twelve-month period ending in June 2016 reflect that the median time from filing to disposition of civil cases in the District of Kansas is 8.7 months; in the District of Utah it is 10.7 months.[38] In Kansas, the median time from filing to trial is 24.5 months, while in Utah it is 29.6 months. In Kansas there are 599 pending cases and 480 weighted filings per judge. In Utah, there are 417 pending cases and 410 weighted filings per judge. Although Utah has a slightly longer median time from filing to disposition and from filing to trial, it has substantially less pending cases and weighted filings. The Court does not find that these differences are significant in the transfer analysis. This factor is neutral.

---

[36]*Freeplay Music, LLC v. Gibson Brands, Inc.*, –F. Supp. 3d–, 2016 WL 4097804, at *5 (S.D.N.Y. July 18, 2016) (quoting *AEC One Stop Grp., Inc.v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 528 (S.D.N.Y. 2004)) (internal alterations omitted).

[37]*Empl'rs Mut. Cas. Co.*, 618 F.3d at 1169.

[38]See Federal Court Management Statistics, Comparison Within Circuit, *available at* http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0630.2016.pdf (June 30, 2016).

### E.     Remaining Factors

The parties agree that the remaining factors are either irrelevant or neutral. There is no question about the enforceability of a judgment in Utah, two of the three claims are brought under federal law, and federal judges are fully qualified to apply state law.[39] Likewise, there is no particular advantage to having a Kansas federal court determine the legal questions in this matter, given that there is no indication that the merits of this action are particular to Kansas.[40] The parties agree that there are no obstacles to a fair trial in either Kansas or Utah. Defendant does not cite any other practical considerations that weigh in favor of transfer here.

### F.     Conclusion

In sum, after considering the relevant discretionary factors, the Court determines that transfer to the District of Utah is appropriate. Any connection between the facts of this case and Kansas is nominal at best. Plaintiff is not a resident of Kansas and there is no material relation between Kansas and the facts alleged. Therefore, Plaintiff's choice of forum is not entitled to substantial weight as it otherwise might be. In contrast, the convenience factors weigh in favor of transferring this case to Utah. The relevant witnesses and documents pertaining to the design and development of Defendant's website are located in Utah. The remaining factors are either irrelevant or neutral. The Court therefore finds that this case should be transferred to the District of Utah.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's 28 U.S.C. § 1404(a) Motion to Transfer to Utah (Doc. 11) is **granted**.

**IT IS FURTHER ORDERED BY THE COURT** that Defendant's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss (Doc. 11) is **denied without prejudice**.

---

[39] *Empl'rs Mut. Cas. Co.*, 618 F.3d at 1169.

[40] *See id.*

**IT IS SO ORDERED.**

Dated: December 14, 2016

                                                                       S/ Julie A. Robinson
                                                                       JULIE A. ROBINSON
                                                                       UNITED STATES DISTRICT JUDGE